## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| CEDAR PARK HEALTHCARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:19-cv-00795-RP |
| | § | |
| HARDEN HEALTHCARE, LLC, | § | (Removed from the District Court of |
| | § | Williamson County, Texas, Cause |
| Defendant | § | No. 19-0213-C368) |

### OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND ABSTAIN

Defendant Harden Healthcare, LLC ("Harden LLC"), by its undersigned counsel, files this Opposition to Plaintiff's Motion to Remand and Abstain. This Court should deny the Motion to Remand and instead transfer this matter to the Northern District of Texas for consolidation with the pending proceedings in the Bankruptcy Court of the Northern District of Texas.

### BACKGROUND

Harden LLC described the background of this case in detail in its Notice of Removal (Dkt. 1) and Opposed Motion to Transfer Venue (Dkt. 6) and incorporates that background here in full. The key facts that are applicable to this Opposition are as follows:

On December 4, 2018, several related entities, referred to collectively for the purposes of this Opposition as the "Debtors," each filed a voluntary petition for protection under Chapter 11 of the United States Bankruptcy Code. All of these cases are being jointly administered under Case No. 18-33967 (BJH), pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (collectively, the "Bankruptcy Case"). Harden LLC is a creditor in the Bankruptcy Case and has asserted claims for indemnity for any losses Harden LLC may suffer related to the Debtors' alleged defaults for commercial leases.

Plaintiff Cedar Park Healthcare LLC ("Cedar Park" or "Plaintiff") claims that it is the assignee of a commercial lease agreement (the "Lease") with a subsidiary of one of the Debtors. Cedar Park asserts that Harden LLC owes outstanding amounts under an alleged guaranty agreement related to the Lease.

Cedar Park's Original Petition was filed on or about February 20, 2019 in the District Court of Williamson County (the "State Court Action"), roughly two months after the Bankruptcy Case commenced. While the State Court Action was pending, the Bankruptcy Case was in active negotiations. On April 1, 2019, the Court approved a settlement agreement between and among Cedar Park and the Debtors, including the mutual release of claims between those parties related to the Lease, as well as payment of certain post-petition rent allegedly due Cedar Park. *See* Dkt. 6, Ex. G, *Order (I) Approving Settlement Agreement and (II) Granting Related Relief* (April 1, 2019) [Bankr. Dkt. 822] (the "Settlement Order"). Debtors "fully intended the settlement with Cedar Park to be a global resolution of all claims relating to the lease, including the release of all guaranties." Ex. A, Debtors' Objection to OLP Wyoming Springs, LLC's Motion for Relief from Automatic Stay. Cedar Park took the position that Harden LLC was not released, a position disagreed with by Debtors. While the Bankruptcy Court initially determined that Harden LLC was not released, the Debtors have disagreed with that ruling, and Harden LLC intends to seek a re-consideration of the Bankruptcy Court's finding in connection with the instant action.

On June 24, 2019, the Debtors filed a proposed Disclosure Statement, and the releases from that Disclosure Statement would arguably release Harden LLC from the alleged obligation that Cedar Park seeks to enforce in this action. *See* Dkt. 6, Ex. I, Disclosure Statement for the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (June 24, 2019) [Bankr. Dkt. 1425] at 36–38. Cedar Park objected to the Disclosure Statement precisely because it complains

that the releases are overly broad, and because of the impact those releases may have on third-party guarantors. Dkt. 6, Ex. J, Objection by Creditor Cedar Park Healthcare, LLC (July 22, 2019) [Bankr. Dkt. 1578].  Debtors have indicated that an amended Disclosure Statement is going to be filed this week, with a hearing set for September 3, 2019.

Two other matters filed against Harden LLC related to alleged lease agreements have also been removed from State Court.  Ex. B, Notice of Removal of OLP Matter; Dkt. 6, Ex. N, Navarro Removal.  One of those matters has already been referred to the Bankruptcy Case, with another currently pending resolution of a motion to transfer and motion to remand.  *Id.*

Harden LLC filed its Notice of Removal to this Court on August 8, 2019 (Dkt. 1), in light of the fact that the Bankruptcy Case has at least one, and likely two, substantially similar matters pending before it. It also became clear at this time that the Disclosure Statement was material to Cedar Park's claims in the State Court Action and that Cedar Park intended to rush the State Court Action forward before the Disclosure Statement disputes were resolved. The amount of the estate available for satisfaction of creditor claims cannot be determined until the issues raised by Cedar Park against Harden LLC (and, consequently, Harden LLC against Debtors) are determined. Additionally, the basis for the claims and damages asserted by Cedar Park against Harden LLC stem from Debtors' alleged default on their obligations under the Lease and what, if any, amounts go unpaid or unmitigated in the Bankruptcy Case.  Moreover, the question of whether the claims against Harden LLC have been released already—or are being released as a part of the Chapter 11 Plan—are core to the Bankruptcy Case and should be determined in that proceeding.

## ARGUMENT AND AUTHORITIES

**A.    The Equitable Factors Weigh in Favor of Extending the Timeline for Removal Under Rule 9006**

Plaintiff asserts as its first basis for remand that Harden LLC's removal is untimely and that Bankruptcy Rule 9006 should not apply to extend the timeline for removal. Plaintiff largely avoids discussing the actual standards for the application of Rule 9006 in favor of argument intended to prejudice Harden LLC.

The Supreme Court has held that excusable neglect under Rule 9006 "may extend to inadvertent delays" and is an "elastic concept" that "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). Accordingly, courts consider several factors for the equitable determination of excusable neglect, including: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. The reasons articulated by Harden LLC in its Notice of Removal go toward the reasonable control and good faith factors. *See* Dkt. 1 at 7–9.

Bankruptcy courts have held that delays of up to two years may be excused as long as they do not "have a significant impact on judicial proceedings." *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2011 Bankr. LEXIS 570, at *12 (Bankr. N.D. Tex. 2011) (holding that nine-month delay did not negatively affect case administration). The delay alleged in this matter is less than half the time that was at issue in *In re Pilgrim's Pride Corp. See id*.

Plaintiff also ignores that significant changes occurred in the Bankruptcy Case after it filed its petition in the State Court Action, and that those changes placed the delay outside of Harden LLC's control.  Two other actions related to alleged lease guaranty agreements have recently been

removed from State Court for referral into the Bankruptcy Case. One has already been referred into the Bankruptcy Case, without opposition. *See* Dkt. 6, Ex. N. As recently as July of this year, the alleged Harden LLC Guaranty was put directly at issue in the Bankruptcy Case by another creditor, who sought relief from the Automatic Stay in part by arguing that Debtors have improperly used the alleged Harden LLC Guaranty to hold up the transfer of the facility. *See* Ex. C, OLP's Motion for Relief from Automatic Stay. Most importantly, in light of Debtors' indemnification obligations to Harden LLC, as well as the release issues raised in the Settlement Order and (potentially) the Disclosure Statement,, the alleged Harden LLC Guaranty is an obligation of the Debtors that directly impacts the estate and the disputes related thereto arise in the Bankruptcy Case.

These settlement issues only became clear in the Bankruptcy Case in the weeks prior to Harden LLC's removal, and were not within Harden LLC's control. The result is similar to *Jones Truck Lines v. Foster's Truck & Equip. Sales (In re Jones Truck Lines)*, 63 F.3d 685 (8th Cir. 1995), where the Eighth Circuit found that counsel's decision to pursue settlement negotiations was good cause for delay under Rule 9006 rather than "willful flaunting of the deadline." *Id.* at 687. Harden LLC had to wait until certain issues were resolved by the Settlement Agreement and its adoption before it could show this Court and others that these were actually core proceedings.

Lastly, there is no evidence of bad faith on the part of Harden LLC in this matter. The above facts show that Harden LLC acted as fast as it reasonably could, particularly given its change in counsel and the numerous ancillary disputes that have been brought by creditors against it. Accordingly, the equities balance in favor of extending the deadline based on Rule 9006, and allowing Harden LLC's removal to go forward.

**B.      The Bankruptcy Court is the Appropriate Venue to Decide Matters of Remand and Abstention**

As discussed in Harden LLC's Motion to Transfer, the Bankruptcy Court is in the best position to determine whether abstention or remand is appropriate, both on the basis of whether this is a "core" bankruptcy proceeding and whether it should hear the claims at issue. *See Bayou Steel Corp. v. Boltex Mfg., Co., L.P.*, No. 03-1045, 2003 U.S. Dist. LEXIS 9395 (E.D. La. 2003), at *1 (E.D. La. June 2, 2003) (determination of whether a matter is "core" or "non-core" is a "determination [] for the bankruptcy judge") *Nelson v. First Lenders Indem. Co.*, 1998 WL 378376, at *1 (N.D. Miss. May 11, 1998) (confronted with a motion to transfer under § 1412 and a motion to remand, holding that removed claims should be "transferred for referral to the appropriate bankruptcy court to determine whether it should hear and determine these claims"); *Orix Finance Corp. v. Nexbank, SSB*, 2008 WL 2796069, at * 4 (N.D. Tex. July 15, 20018) (declining to rule on motion to remand/abstain, in deference to the bankruptcy court, noting bankruptcy judge "is in the best position to determine if remand or abstention is appropriate and does not wish to deprive [her] of the opportunity to make that decision").

The very statute establishing the categories of proceedings under Title 11 explicitly states that "[t]he ***bankruptcy judge shall determine***, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."  28 U.S.C. § 157(b)(3) (emphasis added); *see also Consolidated Lewis Inv. Corp. v. First Nat. Bank of Jefferson Parish*, 74 B.R. 648, 651 (E.D. La. June 16, 1987) ("[T]he question of whether the instant action is a core proceeding must be decided by the [Bankruptcy Court] … [a]lthough plaintiffs have asked this Court to remand this action or in the alternative, abstain, to do so would deprive the bankruptcy court of a § 157(b)(3) determination."). As this Court has acknowledged, federal courts typically permit bankruptcy

courts to decide whether a suit removed to allegations of bankruptcy jurisdiction should be remanded. *In re Dune Energy, Inc.,* 575 B.R. 716, n.3 (Bankr. W.D. Tex. 2017) ("It is not uncommon for a 'conduit' federal court to permit the 'home' bankruptcy court to decide whether a removed suit should be remanded to state court.").

Cedar Park may raise its contentions that abstention and remand are appropriate before the Bankruptcy Court for the Northern District of Texas, which is in a better position to make the Section 157(b) determination as to whether this is a "core" proceeding, and accordingly to decide remand and abstention.

## C.    Should This Court Decide the Motion, the Present Dispute is a Core Proceeding

If this Court decides Plaintiff's Motion, it should find that the State Court Action is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

A "core" proceeding is one that "arises under" the Bankruptcy Code or "arises in" a bankruptcy case, and concerns matters such as the allowance or disallowance of claims, estimation of claims or interests for the purpose of confirming a plan under Chapter 11, creditor/debtor relationship, estate property, and the reorganization of the estate. 28 U.S.C. § 157(b). When the relevant bankruptcy is being administered under Chapter 11, as here, "[t]he jurisdiction of bankruptcy courts may extend more broadly" than in Chapter 7 matters. *Celotex Corp.* v. *Edwards,* 514 U.S. 300, 310 (1995). It does not matter that the debtors are not a party to an underlying dispute—what matters is the impact that the outcome of the dispute may have on the debtors' estate. *See In re Matter of Xonics, Inc.,* 813 F.2d 127,131 (7th Cir. 1987) ("[I]t is the relation of the dispute to estate, and not of party to estate, that establishes jurisdiction"). Actions which could impact the discharge of debts of the estate, for example, are considered "core" matters. *See In re Matter* of Wood, 825 F.2d 90, 97 (5th Cir. 1987). Actions which implicate releases involving

Debtors are also "core" proceedings. *See, e.g., In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d 61, 68 (1st Cir. 2002).

This action is a core proceeding in the Bankruptcy Case pursuant to 28 U.S.C. § 157(b)(2) because, *inter alia,* the claims asserted by the parties are ones which may concern the allowance or disallowance of claims against the estate, estimation of claims or interests, and the relationship between Debtors and its creditors. The bankruptcy estate is directly impacted by the claims raised between the parties, both as it relates to the amount available to satisfy creditor claims, and because of any claims the Debtors may have against enforcement of the Lease (which would in turn impact Cedar Park's claims against Harden LLC), and because of the contractual indemnity provided to Harden LLC by Debtors.   Moreover, the question of whether the release contained in the Settlement Order with Cedar Park released claims against Harden LLC—and Harden LLC's request that the issue be re-considered—is most appropriately heard in the Bankruptcy Case.

At a minimum, the State Court Action is "related to" the Bankruptcy Case. Actions where there is a contractual indemnification obligation held by the debtor are "related to" the bankruptcy proceeding, as they "necessarily affect that[] creditors status *vis a vis* other creditors, and administration of the estate therefore depends upon the outcome of the litigation." *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3d Cir. 1984), *overruled in part by Things Remembered, Inc.* v. *Petrarcal,* 516 U.S. 124 (1995). If Cedar Park were successful in obtaining a judgment against Harden LLC, then Harden LLC would have a claim for indemnity and contribution from Debtors, which would need to be resolved against the bankruptcy estate, creating further administrative complications for the bankruptcy proceedings. The interest of prompt and equitable administration of justice requires that these claims be heard together.

**D.      Abstention is Not Appropriate In Any Case**

Lastly, Cedar Park argues that this Court should abstain from having this matter heard in the Bankruptcy Case. Like the remand issue, the Bankruptcy Court is in the best position to decide this matter. However, if this Court decides the issue, it should not grant abstention.

In order for abstention to be appropriate, Cedar Park is obligated to provide <u>evidence</u> that the dispute can be "timely adjudicated" in the state court action. *In re Dune Energy,* 575 B.R. at 729–30. A naked assertion like Cedar Park's is insufficient to carry that burden. *Id.* Cedar Park cites to no evidence that this matter could be timely adjudicated in the State Court Action beyond its assertion that it has a pending motion for summary judgment, and attaches no evidence whatsoever to its motion. Without that evidence, this Court should not grant abstention.

**REQUEST FOR RELIEF**

WHEREFORE, Defendant Harden LLC requests that this Court deny the Motion to Remand and Abstain in its entirety, and instead transfer this matter to the Northern District of Texas, Dallas Division, for ultimate referral to the Bankruptcy Case pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

Dated:  August 28, 2019

Respectfully submitted,

/s/ Don. H. Magee

McGINNIS LOCHRIDGE LLP
Don H. Magee
State Bar No. 12811800
Ed McHorse
State Bar No. 00791229
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
(512) 495-6093 FAX

**ATTORNEYS FOR DEFENDANT**
**HARDEN HEALTHCARE, LLC**

## CERTIFICATE OF SERVICE

I, Don H. Magee, an attorney, certify that a copy of the foregoing **Opposition to Motion to Remand** was filed electronically and was served upon the following by causing a copy of the same to be sent via electronic mail on this 28 day of August, 2019:

| | |
|---|---|
| Leighton Aiken<br>Dana Campbell<br>Ryan D. Marrone<br>Ferguson Braswell Fraser Kubasta, PC<br>2500 Dallas Parkway, Suite 600<br>Plano, Texas 75093<br>972-378-9111<br>972-378-9115 Fax<br>laiken@fbfk.law<br>dcampbell@fbfk.law<br>rmarrone@fbfk.law<br><br>**COUNSEL FOR PLAINTIFF**<br>**CEDAR PARK HEALTHCARE, LLC** | Wayne E. Sanders<br>Joshua A. Schroeder<br>Sneed, Vine & Perry, P.C.<br>108 East 8th Street<br>Georgetown, Texas 78626<br>512-819-9707 Fax<br>wsanders@sneedvine.com<br>jschroeder@sneedvine.com<br>Email for Filings and Discovery<br>gtwnfilings@sneedvine.com<br><br>**CO-COUNSEL FOR DEFENDANT**<br>**HARDEN HEALTHCARE, LLC** |

/s/ Don. H. Magee

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| CEDAR PARK HEALTHCARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:19-cv-00795-RP |
| | § | |
| HARDEN HEALTHCARE, LLC, | § | (Removed from the District Court of |
| | § | Williamson County, Texas, Cause |
| Defendant | § | No. 19-0213-C368) |

## <u>AFFIDAVIT OF DON MAGEE</u>

STATE OF TEXAS          §

COUNTY OF TRAVIS          §

Don Magee, being duly sworn, deposes and says:

1.      My name is Don Magee. I am over twenty-one (21) years of age. I am of sound mind and have never been convicted of a felony or a crime involving moral turpitude. I am fully competent to testify to the matters set forth herein. The factual matters set forth herein are true and correct to the best of my knowledge.

2.      I am counsel of record for Harden Healthcare, LLC ("Harden LLC"), defendant in the above-captioned action. I submit the foregoing declaration in support of Harden LLC's Motion to Transfer Venue (the "Motion").

3.      Attached hereto are true and correct copies of the foregoing documents:

<u>Exhibit A</u>    Debtors' Objection to OLP Wyoming Springs, LLC's Motion for Relief from Automatic Stay.

<u>Exhibit B</u>    Notice of Removal of OLP Matter.

<u>Exhibit C</u>    OLP's Motion for Relief from Automatic Stay.

Further Affiant sayeth not.



_____
Don Magee

Sworn to before me, this 28th day of August, 2019. .

_____
Notary Public, State of Texas

KIM McBRIDE
NOTARY PUBLIC
ID# 687718-7
State of Texas
Comm. Exp. 02-07-2022

Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

**EXHIBIT**

**A**

Blumberg No. 5208

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| Senior Care Centers, LLC, *et al.*,[1] | § § | Case No. 18-33967 (BJH) |
| Debtors. | § § § | (Jointly Administered) |

## DEBTORS' OBJECTION TO OLP WYOMING SPRINGS, LLC'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby file this

objection (the "**Objection**") to *OLP Wyoming Springs, LLC's Motion for Relief from the*

*Automatic Stay* [Docket No. 1505] (the "**Lift Stay Motion**"). In support of this Objection, the

Debtors, by and through their undersigned counsel, respectfully represent as follows:

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 569] and may also be found on the Debtors' claims agent's website at https://omnimgt.com/SeniorCareCenters. The location of the Debtors' service address is 600 North Pearl Street, Suite 1100, Dallas, Texas 75201.

70053077.2

## JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2.       Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.       On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").[2]

4.       The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Kevin O'Halloran, Chief Restructuring Officer of Senior Care Centers, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*, filed concurrently herewith [Docket No. 25] (the "**First Day Declaration**") and fully incorporated herein by reference.

5.       The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.       No trustee or examiner has been requested in the Chapter 11 Cases.

7.       On December 14, 2018, the Office of the United States Trustee for the Northern District of Texas appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

---

[2]  Certain additional Debtors filed voluntary petitions for relief on January 21, 2019 and May 20, 2019.

8.      On July 8, 2019, OLP filed the Lift Stay Motion. Pursuant to the Lift Stay Motion, OLP seeks to terminate the automatic stay to permit OLP to take all actions necessary to allegedly enforce its rights regarding the premises, including the appointment of a receiver[3] over the Debtor and the facility for the purpose of negotiating a "straightforward" OTA.

## OBJECTION

9.      The Lift Stay Motion, along with *OLP Wyoming Springs, LLC's Motion to Compel Transfer of Facility* [Docket No. 1506] (the "**Motion to Compel**"),[4] represent a wholly improper attempt at forcing this Court to intervene into settlement discussions and force the Debtors to dispose of property of the estate pursuant to a deal that has been rejected by the Debtors as not in the best interest of their estates.

10.     The overarching crux of the matter is that OLP wants to compel the Debtors to transfer operations at the facility without providing any consideration whatsoever. Namely, OLP does not want to release its guaranty claim against Harden Healthcare, LLC ("**Harden**"). Harden asserts indemnification rights against the Debtors for any judgment OLP obtains against Harden.

11.     To shed some light on this issue, every single landlord (except for one) whose lease has been rejected that possessed a Harden guaranty claim has released that claim as consideration for the transfer of the business operations of a facility by the Debtors under an OTA. These landlords include: (i) Sabra Health Care REIT, Inc. and certain of its affiliates; (ii) San Antonio North Knoll, LLC; (iii) Heatherwilde Assisted Living, LLC; (iv) Navarro SNF Development, L.P.;[5] (v) Saddleback Park Valley, LLC; and (vi) Saddleback Sundance, LLC.

---

[3] The Debtors further submit that OLP has no basis in contract or applicable state or federal law to seek the appointment of a receiver.

[4] Concurrently with the filing of this Objection, the Debtors are also filing an Objection to the Motion to Compel.

[5] For clarity, although Navarro SNF Development, L.P. did not technically release its guaranty against Harden, the effect on the Debtors' estates is ultimately the same because they agreed that, "[s]hould Harden pay any guaranty

12.     The only landlord that allegedly has not released its claim against Harden is

Cedar Park Healthcare, LLC ("**Cedar Park**"). In that situation, the Debtors fully intended the

settlement with Cedar Park to be a global resolution of all claims relating to the lease, including

the release of all guaranties. The settlement agreement with Cedar Park explicitly provided:

> Lessor hereby releases, remises, and forever discharges the Lessee Parties ... from
> any and all rights, claims, demand, actions, causes of action, losses, expenses and
> judgments, whether known or unknown, suspect or unsuspected, accrued or not
> accrued, which Lessor has, may have or may claim to have against any of the
> Lessee Released Parties, including, but not limited to any claims raised or which
> could have been raised with respect to the Lease, the SCC Guaranty, or the Option
> through the Effective Date ...

[Docket No. 577, Exhibit B, ¶ 7].

13.     However, despite the clear intention to release all claims with respect to the

lease, Cedar Park reneged on its deal with the Debtors and sought to retain its guaranty claim

against Harden relating to the lease. In resolving an issue that was purely contractual

interpretation, this Court applied the doctrine of *expressio unius est exclusio alterius* and held

that because the settlement agreement explicitly listed the SCC Guaranty, but not the Harden

Guaranty, the Harden Guaranty was not released. The Debtors disagree with that ruling and

object to OLP's mischaracterization in the Lift Stay Motion that alleges that this contractual

interpretation ruling bars the Debtors from conditioning the transfer of the facilities on the

release of claims against nondebtors.

14.     The second principal issue is that OLP has either been unable, or unwilling, to

find a new operator for the facility. For example, in numerous pleadings, OLP has purported to

allege that the Debtors abdicated their duty to find a new operator to OLP. This statement

---

claims asserted by Landlord, and thereafter assert a claim against any of the Debtors on account of any guaranty
claims paid to the Landlord by Harden, the Landlord shall pay to the Debtors an amount equal to the actual
distribution to be made to Harden (and not the allowed amount, if any), in advance, to the extent the Harden claim is
allowed and to the extent the allowed Harden claim is on account of amounts actually paid by Harden to the
Landlord only." [Docket No. 821, ¶ 5].

70053077.2

contradicts industry standards and is disingenuous. It was, and is, solely OLP's obligation to find a new lessee for its property after it was rejected, not the Debtors. In fact, OLP has a duty to mitigate prior to any recovery against Harden.[6] However, the lease has now been rejected since February 28, 2019 and OLP has no new operator.

15.     Currently, there are approximately thirty-five (35) facilities that have been rejected by the Debtors but which still require the transfer of operations to new operators. Of those, thirty-one (31) facilities belong to the Granite portfolio. Accordingly, other than the Granite portfolio, there currently remain only four (4) facilities that have been rejected by the Debtors that still need to have operations transferred. On August 9, 2019, the Debtors filed various settlement & sale motions requesting approval to transfer two (2) facilities, as part of a deal where the landlord has again agreed to release its guaranty claims against Harden. If the Court approves those settlement & sale motions, the Debtors will need to transition operations at only two (2) remaining facilities, other than the Granite portfolio, one of which is OLP.

16.     OLP inaptly argues that it is entitled to relief from the automatic stay for cause pursuant to Bankruptcy Code section 362(d)(1) because the Debtors engaged in bad faith. However, the only purported "bad faith" that OLP can point to is the Debtors' requirement that OLP or the new operator provide consideration in conjunction with the transfer of the Debtors' operations. This is clearly not the requisite bad faith that Bankruptcy Code section 362(d)(1) contemplates. To the contrary, the Debtors believe that OLP has engaged in bad faith by engaging in relentlessly depleting scorched earth litigation, and by refusing to provide any consideration whatsoever for the transfer of the OLP Facility, where this has been a key component of virtually every single other deal with the Debtors' rejected landlords.

---

[6] V.T.C.A., Property Code § 91.006(a).

70053077.2

17. The only other legal authority claimed by OLP in the Lift Stay Motion is the bare allegation that it is entitled to relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(2) because the Debtors "lack equity" in the premises. While the Debtors do not claim any ownership interest in the real property subject to the OLP Lease, OLP seems to confuse the OLP Lease with the Debtors' OLP Facility. The Debtors' estates own and hold equity with respect to the Debtors' assets related to the facility, including, without limitation, the Debtors' licenses, accounts receivable, and equipment, among other valuable personal property of the Debtors used in the Debtors' operation of the OLP Facility. Retained earnings related to the facility also flow through the parent company of the Debtors.  It is OLP that holds no rights, claim or interest in the Debtors' OLP Facility operations or assets.  *See also Debtors' Objection To Motion To Compel Transfer Of Facility* filed contemporaneous to this Objection at Dkt. No. 1754.

18. By this Objection, the Debtors respectfully request that the Court deny the relief requested in the Lift Stay Motion and continue to impose the requirements of the automatic stay on OLP. There is no legal basis to force the Court to intrude upon settlement discussions, lift the automatic stay for any reason, or otherwise compel the Debtors to transfer property of their estates without any consideration.

## CONSENT TO JURISDICTION

19. The Debtors consent to the entry of a final judgment or order, with respect to this Objection, if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

20.    Notice of this Objection shall be provided to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Office of the Attorney General of Texas and Louisiana; (c) counsel to the Committee; (d) counsel to CIBC Bank USA; (e) the Department of Medicaid, Department of Health, and Division of Health Services Regulation in each state in which the Debtors operate; and (f) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

21.    The Debtors respectfully submit that such notice is sufficient and that no further notice of this Objection is required.

**WHEREFORE**, the Debtors respectfully request that the Court deny the Lift Stay Motion in its entirety and grant such other and further relief as the Debtors may be justly entitled.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 16, 2019                    Respectfully submitted,
Dallas, Texas

**POLSINELLI PC**

/s/     *Trey A. Monsour*
Trey A. Monsour
State Bar No. 14277200
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tmonsour@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Counsel to the Debtors and Debtors in Possession*

𝓑

CAUSE NO. 18-1511-C368

| | | |
|---|---|---|
| OLP WYOMING SPRINGS, LLC, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | |
| HARDEN HEALTHCARE, LLC and SENIOR CARE CENTERS, LLC, | § § § | WILLIAMSON COUNTY, TEXAS |
| Defendants, | § § | |
| v. | § § | |
| BENJAMIN HANSON, | § § | |
| Third-Party Defendant | § § | 368th JUDICIAL DISTRICT |

## NOTICE OF FILING NOTICE OF REMOVAL

Be advised Defendant Harden Healthcare, LLC has filed a Notice of Removal of all claims and causes of action in the above-captioned matter pursuant to 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027 in the United States District Court for the Western District of Texas, Austin Division. A copy of the Notice of Removal is attached hereto as Exhibit 1. In accordance with Rule 9027 of the Federal Rules of Bankruptcy Procedure, removal is effected on filing the copy of the Notice of Removal herein and the parties shall proceed no further in this Court unless and until any claim or causes of action is subsequently remanded.

**BARNES & THORNBURG LLP**

By: */s/ Jamie R. Welton*
      Jamie R. Welton
      State Bar No. 24013732
      Robert M. Castle, III
      State Bar No. 24036338
      Thomas G. Haskins, Jr.
      State Bar No. 24087681

      2121 N. Pearl St., Suite 700
      Dallas, TX 75201-2469
      (214) 258-4200 Telephone
      (214) 258-4199 Facsimile
      rcastle@btlaw.com
      jwelton@btlaw.com
      thaskins@btlaw.com

      Wayne E. Sanders
      State Bar No. 24041862
      Sneed, Vine & Perry, P.C.
      108 East 8th Street
      Georgetown, Texas  78626
      (512) 930-9775 Telephone
      (512) 819-9707 Facsimile
      wsanders@sneedvine.com

**ATTORNEYS FOR DEFENDANT,**
**HARDEN HEALTHCARE, LLC**

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of August, 2019, a true and correct copy of the foregoing document was served on all counsel of record via the Electronic Case Filing System.

*/s/ Jamie R. Welton*
Jamie R. Welton

# Exhibit 1

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document 1   Filed 08/02/19   Page 5 of 15   PageID 1086
Case 1:19-cv-00777   Document 1   Filed 08/02/19   Page 1 of 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| OLP WYOMING SPRINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. _____s |
| | ) |
| HARDEN HEALTHCARE, LLC AND SENIOR | )   (Removed from the District Court of |
| CARE CENTERS, LLC, | )   Williamson County, Texas, Cause |
| | )   No. 18-1511-C368) |
| Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| BENJAMIN HANSON, | ) |
| | ) |
| Intervenor | ) |

## NOTICE OF REMOVAL BASED UPON 28 U.S.C. §§ 1452 AND RULE 9027 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Defendant Harden Healthcare, LLC ("Harden"), by its undersigned counsel, files this Notice of Removal of this action from the District Court of Williamson County, Texas, to this Court pursuant to 28 U.S.C. §§ 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure.

## BASIS FOR REMOVAL

1.    Plaintiff OLP Wyoming Springs LLC ("OLP," "Landlord," or "Plaintiff"), commenced a civil action in the District Court of Williamson County, Texas, by filing its Original Petition on or about November 20, 2018, captioned *OLP Wyoming Springs LLC v. Harden Healthcare LLC and Senior Care Centers LLC*, Cause No. 18-1511-C368 (the "Petition" and "State Court Action"). A copy of the Petition, along with a copy of all process and pleadings

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 3    Page 26 of 49    Page 6 of 15    PageID 1087
Case 1:19-cv-00777    Document 1    Filed 08/02/19    Page 2 of 11

in the State Court Action, together with a copy of the Docket Report, are being filed herewith as

**Exhibit 1**.

2.      OLP's claims in the State Court Action pertain to an alleged commercial lease

agreement with PM Management—Round Rock AL, LLC ("Tenant" or "Round Rock"), dated

November 10, 2010, and certain alleged guaranty agreements related thereto.

3.      Tenant was a subsidiary of CTLTC Real Estate, LLC ("CTLTC").

4.      In September 2013, Harden was merged with and into an affiliate of Gentiva

Health Services, Inc. ("Gentiva").  In conjunction with the merger, Harden's long-term care

business, which was comprised of CTLTC and its subsidiaries, including Tenant, was spun off

and retained by Harden's prior owners, which included, *inter alia*, Benjamin Hanson.

Thereafter, Hanson became the President and CEO of CTLTC.

5.      In 2015, CTLTC sold its long-term care assets, including Tenant, to Senior Care

Centers, LLC ("SCC").

6.      Three years later, in June 2018, OLP declared a default under the terms of the

Lease for Tenant's alleged failure to pay outstanding amounts owed thereunder.

7.      OLP initiated the State Court Action against SCC and Harden in November 2018,

seeking to collect amounts it alleges are owed under various guaranty agreements related to the

Lease.

8.      Hanson is the purported signatory on each of the guaranty agreements OLP is

seeking to enforce against Harden.

9.      On December 4, 2018, defendant SCC and 127 related entities, including CTLTC

and Tenant, each filed a voluntary petition for protection under Chapter 11 of the United States

Bankruptcy Code.  For purposes of this Notice, SCC, CTLTC, and Tenant, are collectively

---

referred to as "Debtors." All of the SCC-related bankruptcy cases are being jointly administered under Case No. 18-33967 (BJH), pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division  (collectively, the "Bankruptcy Case").

10.     On June 20, 2019, OLP took the deposition of Hanson, wherein Hanson testified he did not recall executing any of the guaranty agreements OLP seeks to enforce against Harden, and, in particular, did not have authority to enter the affirmation of guaranty on behalf of Harden that OLP is seeking to enforce against Harden (as Hanson had resigned from Harden in conjunction with the spin-off of CTLTC and subsequent merger of Harden with and into an affiliate of Gentiva well prior to the purported execution of the alleged affirmation of guaranty).

11.     On July 9, 2019, defendant Harden sought leave to file its Original Counterclaims and Third-Party Petition in the State Court Action asserting causes of action against OLP and third-party defendant Hanson regarding the alleged guaranty agreement OLP is seeking to enforce against it ("Third-Party Petition").  A copy of the Third-Party Petition is contained in Exhibit 1.

12.     On July 25, 2019, Hanson intervened in the State Court Action as a matter of right and asserted declaratory judgment claims seeking various declarations related to the purported guaranty agreements and any liability he may have for executing them without requisite authority.

13.     On July 29, 2019, Harden asserted counterclaims against Hanson, and cross-claims against OLP ("Harden's Counterclaims"), alleging Hanson's breach of his fiduciary duties to Harden, as well as aiding and abetting those fiduciary duty breaches against OLP.  A copy of Harden's Counterclaims is contained in Exhibit 1.

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 3    Page 28 of 49    Page 8 of 15    PageID 1089
Case 1:15-cv-00777    Document 1    Filed 08/02/19    Page 4 of 14

14.     The Debtors continue to operate as a debtor-in-possession, and no plan of reorganization of liquidation has been confirmed in the Bankruptcy Case.

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1452 and Fed.R.Bankr.P. 9027 because the dispute presents a "core" proceeding under 28 U.S.C. §§ 157(b)(2) and 1334(b) with respect to the Debtors, or otherwise arises in or otherwise relates to the Bankruptcy Case, and thus is appropriate for adjudication in the Bankruptcy Case. Because Hanson's declaratory judgment claims regarding the purported guaranty agreements between Harden and OLP are inextricably connected with those made by OLP against Debtors, claims Harden may have against Hanson and Debtors related to OLP, and claims Hanson may have against debtor CTLTC, all causes of action in the State Court Action are appropriate for removal.

## NATURE OF CLAIMS IN THE STATE COURT ACTION

16.     On or about November 10, 2010, Prevarian Senior Living, LP ("Prevarian"), as landlord, and PM Management – Round Rock AL, LLC, as tenant, allegedly entered into a commercial lease agreement (the "Lease") for property in Williamson County, Texas (the "Property"). The Property was utilized by Round Rock to operate a long-term care facility.

17.     According to OLP, the Lease allegedly contained a guaranty of the tenant's obligation, which OLP contends was executed by Hanson on behalf of Harden. The Lease was allegedly assigned thereafter by Prevarian to Prevarian SL Round Rock, LP ("Prevarian SL") in March 2011, and allegedly by Prevarian SL to OLP in August 2013.

18.     In September 2013, Harden was merged with and into an affiliate of Gentiva. As part of the Gentiva merger, Harden's long-term care business, which was comprised of CTLTC and its subsidiaries, including Tenant, was spun off and retained by Harden's prior owners,

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 1    Filed 08/02/19    Page 9 of 15   PageID 1090
Case 1:19-cv-00777    Document 1    Filed 08/02/19    Page 5 of 11

which included, *inter alia*, Hanson.  Thereafter, Hanson became the President and CEO of CTLTC, and he resigned from Harden effective October 13, 2013.

19.    In 2015, Harden's former owners sold the long-term care assets they had retained in the Gentiva merger (CTLTC) to SCC, which included Round Rock and the alleged Lease.

20.    According to OLP, in conjunction with SCC's purchase of CTLTC from Harden's former owners, SCC also executed a guaranty agreement in April 2015 regarding the Lease.

21.    OLP alleges Tenant and SCC subsequently defaulted on their obligations under the Lease and guaranty agreement in June 2018.

22.    OLP filed the State Court Action in November 2018 against SCC and Harden, seeking to enforce the alleged guaranty agreements related to the Lease.

23.    Shortly thereafter, on December 4, 2018, Debtors filed the Bankruptcy Case.  In addition to SCC, both Round Rock (Tenant) and CTLTC are also debtors in the Bankruptcy Case.

24.    Harden is a creditor in the Bankruptcy Case and has asserted claims therein against, *inter alia*, Tenant for any losses Harden may suffer arising out of or related to Tenant's alleged default under the Lease.

25.    In the counterclaims filed by Harden in the State Court Action, Harden alleges Hanson may be responsible to Harden and/or OLP for amounts OLP claims are owed by Harden under any of the alleged guaranty agreements, and particularly, the affirmation of guaranty, which Hanson allegedly executed without authority and after he had resigned from Harden.  On July 25, 2019, Hanson intervened in the State Court Action as a matter of right to seek declaratory judgment on the issues regarding the purported guaranty agreements between Harden and OLP, and any liabilities that may arise therefrom, including any related claims and liabilities

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document   Filed 08/30/19   Page 10 of 15   PageID 1091
Case 3:19-cv-06777   Document 1   Filed 08/02/19   Page 6 of 119

Hanson may have regarding OLP, Harden, and the Debtors.  With Hanson's intervention, Harden may now, and has, asserted as a matter of right its counterclaims against Hanson and cross-claims against OLP, as set forth in Harden's Counterclaims.

26.    OLP is actively participating in the Bankruptcy Case and seeking to recover amounts allegedly owed under the Lease from Debtors.  *See, inter alia,* OLP Proof of Claim against SCC and Round Rock (Mar. 12, 2019) [Claim 39-2].

27.    OLP has requested in the Bankruptcy Case that certain 2018 property taxes for the Property be paid out of the bankruptcy estate.  *See* OLP Response to Debtors' Third Omnibus Motion to Reject Unexpired Leases and Executory Contracts (Feb. 19, 2019) [Bankr. Dkt. 533]; OLP Supplemental Brief in Support of Landlord's Request for Payment of Property Taxes Under 11 U.S.C. §365(D)(3) (Mar. 4, 2019) [Bankr. Dkt. 628].

28.    OLP has sought and obtained relief for certain post-petition rent and tax payments allegedly due OLP from Debtors, and is currently seeking to compel additional payments from one or more of the Debtors in the Bankruptcy Case.  *See, inter alia,* OLP's Amended Motion for Allowance and Payment of Administrative Expense (June 14, 2019) [Bankr. Dkt. 1349]. Specifically, in OLP's most recent request for payments in the Bankruptcy Case, OLP has sought in excess of $842,000 in rent payments for Dec. 2018 and Mar.-May 2019 (having already received rent payments for Jan. – Feb. 2019), and property taxes for Dec. 2018 through May 2019. *See id.*

29.    OLP has issued a subpoena duces tecum to SCC in the Bankruptcy Case in further pursuit of its claims and various remedies asserted in the Bankruptcy Case.  *See* OLP Subpoena (July 1, 2019) [Dkt. 1471].

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document    Filed 08/26/19    Page 11 of 15    PageID 1092
Case 1:19-cv-00777    Document 1    Filed 08/02/19    Page 7 of 11

30.     OLP has also filed a Motion for Relief from the Automatic Stay to exercise additional remedies against Tenant and/or SCC in its efforts to recoup additional sums it alleges are owed on the Lease, and a motion to compel the transfer of the Facility to a new operator. *See* OLP's Motion for Relief from the Automatic Stay (July 8, 2019) [Bankr. Dkt. 1505]; OLP's Motion to Compel Transfer of Facility (July 8, 2019) [Bankr. Dkt. 1506].

31.     OLP's Motion for Allowance and Payment of Administrative Expense, Motion for Relief from the Automatic Stay, and Motion to Compel Transfer of the Facility, are currently set for hearing in the Bankruptcy Case on August 27, 2019. *See* Amended Notice of Hearing (July 15, 2019) [Bankr. Dkt. 1534].

32.     OLP has also entered into an agreed scheduling order with the Debtors to govern discovery proceedings related to the above-referenced motions. *See* Agreed Scheduling Order between Debtors and OLP Wyoming Springs, LLC (July 25, 2019) [Bankr. Dkt. 1617]. Among other things, it provides for depositions to occur during the week of August 19, 2019. *Id.*

33.     The Debtors have already filed their proposed Disclosure Statement. *See* Disclosure Statement for the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (June 24, 2019) [Bankr. Dkt. 1425]. The releases provided for in the Disclosure Statement would release Harden LLC from the alleged obligation that OLP seeks to enforce in the State Court Action. *See id.* at Pgs. 36-38. Indeed, multiple parties have already objected to the Disclosure Statement precisely because they complain that the releases are overly broad, and because of the impact they may have on third-party guarantors. *See* Objection by Creditor Cedar Park Healthcare, LLC (July 22, 2019) [Bankr. Dkt. 1578]; *see also* Independent Landlords' Objection to the Disclosure Statement (July 22, 2019) [Bankr. Dkt. 1592]. A hearing

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document   Filed 08/02/19   Page 12 of 15   PageID 1093
Case 1:19-cv-00777   Document 1   Filed 08/02/19   Page 8 of 11

is set on the Disclosure Statement—and objections thereto—for August 7, 2019. *See* Notice of Hearing (July 26, 2019) [Bankr. Dkt. 1635].

34.     The State Court Action is a core proceeding in the Bankruptcy Case pursuant to 28 U.S.C. § 157(b)(2) because, *inter alia*, the claims asserted by OLP, those sought to be asserted therein by Harden, and the declaratory judgment claims Hanson has asserted in the State Court Action, are proceedings which may concern the allowance or disallowance of claims against the estate, and estimation of claims or interests.

35.     The amount of the estate available for satisfaction of creditor claims cannot be determined until the issues raised by OLP against Debtors (and, consequently, Harden against Debtors, Harden against OLP and Hanson, the declaratory judgment claims asserted by Hanson, and any claims Hanson may make against one or more Debtors based thereon) are determined. And, the basis for the claims and damages asserted by OLP against Harden — and thus the claims and damages Harden has asserted against Hanson, and the duties and obligations Hanson seeks to have declared vis-à-vis OLP and Harden — stem from Debtors' alleged default on their obligations under the Lease and what, if any, amounts go unpaid or unmitigated in the Bankruptcy Case.   Accordingly, the State Court Action arises in the Bankruptcy Case, or otherwise relates to the Bankruptcy Case.

36.     To the extent that any judgment were to be rendered against Harden (or Hanson), it would result in an additional claim and cause of action against Debtors.  In fact, in Harden's Counterclaims, Harden alleges that "the action currently alleged by OLP against Harden directly impacts, is impacted by, and arises in connection with the SCC Bankruptcy." *See* Harden LLC's Original Counterclaims, ¶ 15.

---

37.     An efficient adjudication of the Debtor's estate, rights and obligations can only be had by determination in the Bankruptcy Case of the claims initially brought in the State Court Action.

### ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

38.     This Notice of Removal is timely filed under Fed.R.Bankr.P. 9027, because it is filed within thirty (30) days after the date on which Hanson intervened in the State Court Action.

39.     OLP, Hanson, and the Clerk of the Court for the 368th Judicial District Court of Williamson County, Texas have been served contemporaneously with a copy of this Notice of Removal.

40.     Pursuant to Fed.R.Bankr.P. 9027, a copy of all process and pleadings in the State Court Action, together with a copy of the Docket Report, are being filed herewith as Exhibit 1.

41.     Harden consents to the entry of final orders or judgments by the bankruptcy court in the Bankruptcy Case.

### REQUEST FOR RELIEF

WHEREFORE, Defendant Harden Healthcare, LLC, pursuant to Fed.R.Bankr.P. 9027, 28 U.S.C. §§ 157 and 1334(b), and in conformance with the requirements set forth therein, hereby removes this cause from the District Court of Williamson County, Texas, to the United States District Court for the Western District of Texas, Austin Division, for subsequent transfer to the United States District Court for the Northern District of Texas, Dallas Division, and referral to the Bankruptcy Case pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document    Filed 08/26/19    Page 14 of 15    PageID 1095
Case 1:19-cv-00777    Document 1    Filed 08/02/19    Page 10 of 19

Dated:  August 2, 2019

BARNES & THORNBURG LLP

By: */s/ Thomas G. Haskins*
      Jamie R. Welton
      State Bar No. 24013732
      Robert M. Castle, III
      State Bar No. 24036338
      Thomas G. Haskins, Jr.
      State Bar No. 24087681

      2121 N. Pearl St., Suite 700
      Dallas, TX 75201-2469
      (214) 258-4200 Telephone
      (214) 258-4199 Facsimile
      rcastle@btlaw.com
      jwelton@btlaw.com
      thaskins@btlaw.com

      Wayne E. Sanders
      State Bar No. 24041862
      Sneed, Vine & Perry, P.C.
      108 East 8th Street
      Georgetown, Texas  78626
      (512) 930-9775 Telephone
      (512) 819-9707 Facsimile
      wsanders@sneedvine.com

**ATTORNEYS FOR DEFENDANT,
HARDEN HEALTHCARE, LLC**

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Document   Page 35 of 49
Case 3:19-cv-02283-E   Document 1   Filed 08/02/19   Page 15 of 15   PageID 1096
Case 1:19-cv-00777   Document 1   Filed 08/02/19   Page 11 of 11

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of August, 2019, a true and correct copy of the foregoing document was served on all counsel of record via the Electronic Case Filing System.


_/s/ Thomas G. Haskins_____
Thomas G. Haskins

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document 4   Filed 08/29/19   Page 1 of 13   PageID 1097
Case 18-33967-bjh11   Doc 1305   Filed 07/08/19   Entered 07/08/19 17:13:14   Page 1 of 13

Michael P. Cooley (SBN 24034388)
Keith M. Aurzada (SBN 24009880)
Lindsey L. Robin (SBN 24091422)
**REED SMITH LLP**
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: 469.680.4200
F: 469.680.4299
mpcooley@reedsmith.com
kaurzada@reedsmith.com
lrobin@reedsmith.com

*Attorneys for OLP Wyoming Springs, LLC*



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Senior Care Centers, LLC *et al.*, | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |

## OLP WYOMING SPRINGS, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**Pursuant to Local Bankruptcy Rule 4001-1(b), a response is required to this motion, or the allegations in the motion may be deemed admitted, and an order granting the relief sought may be entered by default.**

**Any response shall be in writing and filed with the Clerk of the United States Bankruptcy Court at the Earle Cabell Federal Building, 1100 Commerce St., Rm. 1254, Dallas, Texas, 75242-1496 before close of business on July 22, 2019, which is at least 14 days from the date of service hereof.   A copy shall be served upon counsel for the moving party and any trustee or examiner appointed in the case.   Any response shall include a detailed and comprehensive statement as to how the movant can be "adequately protected" if the stay is to be continued.**

OLP Wyoming Springs, LLC ("**OLP**"), a landlord and party in interest in the above-referenced case, files this *Motion for Relief from the*

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document 4   Filed 07/06/19   Page 2 of 13   PageID 1098
Case 18-33967-bjh11   Doc 1905   Filed 07/06/19   Entered 07/09/19 17:13:14   Page 2 of 13

*Automatic Stay* (the "**Motion**") and, in support thereof, would respectfully show the Court as follows:

## I.
## INTRODUCTION

1.      This case has one fundamental truth: Even though the Debtor Tenant has rejected the OLP Lease and does NOT intend to keep the facility under its recently filed plan of reorganization, it continues to operate in OLP's Premises without paying rent and is refusing to transition the facility unless OLP releases an unrelated, non-debtor, third-party guarantor, despite the fact that such release cannot be compelled under *Bank of New York Trust Co. v. Official Unsecured Creditors Comm. (In re Pacific Lumber)*, 584 F.3d 229, 253 (5th Cir. 2009) or indemnifies the Debtors' estate for claims filed by the guarantor.

2.      The Debtors' conduct amounts to an abuse of process at the expense of OLP's attempts to sell the Premises, transition the residents to better care, and to mitigate damages in the form of reduced administrative costs to the estate.   Under such facts, cause exists for relief from the automatic stay.

## II.
## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 to enter a final order granting the relief requested herein. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409. This Court has authority to grant the relief requested pursuant to §§ 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**")[1], Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1.

---

[1] Except as otherwise noted herein, all section (§) references are to the Bankruptcy Code.

---

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Document   Page 3 of 13   PageID 1099
Case 3:19-cv-02283-E   Document 4   Filed 08/28/19   Page 3 of 13   PageID 1099
Case 18-33967-bjh11   Doc 1303   Filed 07/08/19   Entered 07/08/19 17:13:14   Page 3 of 13

# III.
# BACKGROUND

*A.    Lease History*

4.    The Debtors operate an assisted living facility known as Wyoming Springs Assisted Living and Memory Care (the "**Facility**") in Round Rock, Texas on that certain real property (the "**Premises**") leased by Debtor PM Management-Round Rock AL, LLC (the "**Debtor Tenant**"), as tenant, under the terms of that certain Lease Agreement (as amended from time to time thereafter, the "**OLP Lease**"), dated November 10, 2010. The rights and responsibilities of the Landlord under the OLP Lease were assigned to OLP Wyoming Springs, LLC, by an Assignment of Lease dated August 6, 2013.

5.    As additional assurance of payment of the Debtor Tenant's obligations under the OLP Lease, each of Senior Care Centers, LLC, and Harden Healthcare, LLC ("**Harden**"), provided an unconditional guarantee to the Landlord of the full and prompt payment of all obligations of the Debtor Tenant under the OLP Lease. Harden's guarantee was memorialized in that certain Guaranty Agreement, dated November 10, 2010 (the "***Harden Guaranty***"), and reaffirmed by Harden under an Affirmation of Guaranty, dated November 12, 2013, by Harden in favor of OLP.  Harden is not a Debtor in this pending chapter 11 case.

6.    Under the terms of the OLP Lease, the Debtor Tenant is obligated to make various payments to OLP arising from the Debtor Tenant's use and occupancy of the Premises, including rent, *see* OLP Lease § 3.1; property taxes, *see* OLP Lease § 9.1; and utility charges, *see* OLP Lease § 9.2.

*B.    Chapter 11 Background*

7.    On December 4, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to manage and operate their business as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 4    Filed 09/30/19    Page 4 of 13    PageID 1100
Case 18-33967-bjh11    Doc 1305    Filed 07/08/19    Entered 07/08/19 17:13:14    Page 4 of 13

8.      Since the Petition Date, the Debtors have continued to use the Premises to operate the Facility and incur regular rent and other obligations under the OLP Lease. Nevertheless, the Debtors sought to reject the OLP Lease, and the Court entered an order [Docket No. 589] (the "**Third Rejection Order**") authorizing the rejection of the OLP Lease effective February 28, 2019. On March 12, 2019, OLP filed a proof of claim asserting a general unsecured claim for damages arising from the Debtors' rejection of the OLP Lease in the amount of not less than $2,797,610.64.

9.      Because the Debtors did not themselves identify a new operator to whom they could assign or transition their operation of the Facility, they have continued to operate the Facility while OLP has searched for a new operator.  During this time, the Debtors have continued to use and occupy the Premises since the Rejection Date.  According to the Debtors' monthly operating reports for the last several months, the Debtor Tenant has generated receipts and disbursements as follows:

|               | Receipts    | Disbursements |
| ------------- | ----------- | ------------- |
| May 2019      | $352,138    | $201,361      |
| April 2019    | $359,706    | $207,418      |
| March 2019    | $342,561    | $203,326      |
| February 2019 | $329,054    | $147,072      |
| January 2019  | $351,837    | $136,517      |
|               | $1,735,296  | $895,694      |

10.     Prior orders by the Court have directed the Debtors to pay certain amounts accruing under the OLP Lease as part of its duty to "timely perform" lease obligations under § 365(d)(3). First, the Third Rejection Order directed the Debtors to timely pay the January and February 2019 rent required under the leases rejected by that order "at the full contract rate…as soon as practical, but in no event later than ten (10) business days after the entry of this Order." Third Rejection Order, at ¶ 11. The Third Rejection Order also provided that the Stub Rent would be determined under § 503(b)(1)(A) and be payable upon further order of this Court. Third Rejection Order, at ¶ 12.

11.     In addition, the Court ordered the Debtors to timely pay property taxes accruing under the OLP Lease from December 4, 2018 to

---

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 1    Page 40 of 49    Page 5 of 13    PageID 1101
Case 18-33967-bjh11   Doc 1305  Filed 07/05/19   Entered 07/05/19 17:13:14   Page 5 of 13

December 31, 2018, in a separate order [Docket No. 1170] (the "**Taxes
Order**"), entered May 22, 2019.[2] Initially, the Court concluded in its oral
ruling that "taxes accruing December 4, 2018 through February 28, 2019
are entitled to priority treatment under § 365(d)(3)." Transcript of April 12,
2019, Oral Ruling, at 14:15-19. However, in the Taxes Order, the Court
ordered that only that portion of property taxes accruing between December
4, 2018 and December 31, 2018…as calculated on a per diem basis, shall
be entitled to treatment and payment under 11 U.S.C. 365(d)(3)." Taxes
Order, at ¶ 3.   The Taxes Order then granted OLP an administrative
expense for the taxes accruing on the Premises between January 1, 2019
and February 28, 2019.[3] Taxes Order, at ¶ 5. OLP has appealed the Taxes
Order to the district court, and that appeal remains pending.

12.    Nevertheless, substantial postpetition obligations remain
unpaid under the OLP Lease for the Debtors' continuing use and occupancy
of the Premises, including (i) rent accruing from the Petition Date to
December 31, 2018, in the approximate amount of $151,941.76 and from
and after March 1, 2019, at the rate of approximately $174,451.64 per
month; and (ii) property taxes accruing from and after January 1, 2019, at
the rate of approximately $28,463.92 per month[4] (collectively, the
"**Postpetition Claims**"). The following Table 1 provides a summary of the
Postpetition Claims accruing as of May 31, 2019.

---

[2] OLP appealed the Taxes Order on June 4, 2019 [Docket No. 1258]. OLP
contends that the Court erred in its application of the "accrual method" instead of the
"billing method" to determine the taxes payable under § 365(d)(3), and then erred further
in thereafter contraverting its own ruling and applying the "billing method" to relieve the
Debtors of the obligation to "timely perform" the payment of taxes accruing in January
and February 2019.

[3] Although the Taxes Order suggests these taxes are "only payable at the time
provided under Texas law and the terms of the OLP Lease," OLP believes that this
provision inadvertently violates other provisions of the Bankruptcy Code, including both
§ 503(b) and § 1129(a)(9).

[4] This figure is estimated based on the 2019 Notice of Appraised Value on the
Premises received by OLP.

---

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 4    Filed 09/12/19    Page 6 of 13    PageID 1102
Case 18-33967-bjh11 Doc 1505 Filed 07/08/19    Entered 07/08/19 17:13:14    Page 6 of 13

| Postpetition Claims (through May 31, 2019) | |
|---|---|
| Stub Rent (Dec. 2018) | $151,941.76 |
| Postpetition Rent (Mar-May 2019) | $523,354.92 |
| Property Taxes (Dec. 4-31, 2019) | $25,303.38 |
| Property Taxes (Jan-May 2019) | $142,319.58 |
| | $842,919.64 |

13.    Accordingly, OLP has filed a motion for allowance of administrative expenses for the payment of such lease obligations through May 31, 2019, in the total amount $842,919.64, which amount will continue to increase until the Debtors vacate the Premises.  That matter is currently pending.

14.    In addition, on November 20, 2018, OLP filed suit against guarantors Harden and Senior Care Centers, LLC, in the 368th Judicial District Court of Williamson County, Texas, Cause No. 18-1511-C368.  In that action, OLP asserted claims against Harden for breach of the Harden Guaranty, and presently seeks in excess of $10 million in damages (plus legal fees) from Harden.

*C.    OTA Negotiations*

15.    In the last few weeks, OLP identified a willing buyer to purchase the Premises and to facilitate the transfer of operations of the Facility to a new operator.  For the Debtor Tenant to effectuate a smooth transfers of the Debtor Tenant's operations of the Premises to a new operator, the Debtor Tenant must execute an Operational Transfer Agreement ("**OTA**").

16.    Recently, however, negotiations over both the sale of the Premises and the transfer of operations at the Facility came to a halt when the Debtors made clear that any transfer of operations of the Facility *must* be accompanied by OLP's agreement to release (i) all claims of OLP against the Debtors, including OLP's asserted unsecured claims and administrative expenses; and (ii) the *nondebtor* Harden from its liability

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document 1   Page 42 of 49   Page 7 of 13   PageID 1103
Case 18-33967-bjh11   Doc 1905   Filed 07/08/19   Entered 07/08/19 17:13:14   Page 7 of 13

under the Harden Guaranty.[5] Presently, the Debtors' have informed OLP
and its representatives that the Debtor Tenant *will not* transfer the
Facility—despite its rejection of the OLP Lease and inability to meet
current expense obligations—unless OLP agrees to release its claims
against both Debtor and nondebtor entities.  The Debtors' demands are
contrary to applicable law and represent an unwarranted use of OLP's
Premises and the Debtor Tenant's patient-residents as leverage to demand
additional consideration that the Debtors' have no right to seek.  In light of
the Debtors' decision to go "pencils down" until OLP and its purchaser
acquiesce, OLP fears it may both lose a buyer and find the Facility still
stuck in the hands of an operator with no desire to operate it.

## IV.
## RELIEF REQUESTED

17.    By this motion, OLP requests that the Court vacate the
automatic stay under § 362(d)(1) and (d)(2) to permit OLP to take all
actions necessary to enforce its rights regarding the Premises as authorized
under applicable state law, including to seek the appointment of a receiver
over the Debtor Tenant and the Facility at the Premises for the purpose of
negotiating a straightforward OTA that does not hinge on the interests of
nondebtor obligors.

## V.
## BASIS FOR RELIEF

18.    OLP is entitled to stay relief pursuant to § 362(d)(1) for cause.
The Debtors, in bad faith, are attempt to extract concessions from OLP that
(without OLP's agreement) violate the Bankruptcy Code.  Additionally,
stay relief is appropriate under § 362(d)(2) because the Debtors lack equity
in the Premises and, because the OLP Lease has been rejected, the Premises
are not necessary to an effective reorganization.

19.    In the instant case, the Debtors are attempting to force two
concessions that cannot be compelled under the Bankruptcy Code.

---

[5] Upon information and belief, the Detors would alternatively accept OLP's
agreement to indemnify the Debtors against any amounts that Harden may seek to
recovery from the Debtors, which would turn the Harden Guaranty completely on its
head and have the same practical impact to OLP as an outright waiver of the guaranty.

---

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 4    Filed 03/28/19    Page 8 of 13    PageID 1104
Case 18-33967-bjh11    Doc 1305    Filed 07/08/19    Entered 07/08/19 17:13:14    Page 8 of 13

20.    *First*, the Debtors seek to force OLP to release Harden—a
nondebtor—as a condition to their own agreement to proceed with the OTA.
Releases of unrelated parties—such as the Harden release upon which the
Debtors insist—are inappropriate under applicable law. *See, e.g.*, *Bank of
New York Trust Co. v. Official Unsecured Creditors Comm. (In re Pacific
Lumber)*, 584 F.3d 229, 253 (5th Cir. 2009).   At present, the Debtors have
refused even to discuss the OTA with OLP's buyer unless OLP first
acquiesces in the Debtors' demand.[6]

21.    The Debtors' demand is made all the more extraordinary
because this Court has already rejected a similar demand by the Debtors at
least once before.  Earlier in these chapter 11 cases, the Debtors entered
into an OTA and accompanying Compromise and Release Agreement (the
"**Cedar Park Settlement**") with another one of their landlords, Cedar Park
Healthcare, LLC ("**Cedar Park**").   Among other terms, the Cedar Park
Settlement provided for the landlord to waive and release all of its claims
against the Debtors, as well as "all claims against any and all guarantors of
the Lease." *See* Docket No. 767.  This release, however, was explicitly
limited by the parties, who agreed that it would not grant any release in
contravention of the Fifth Circuit's precedential ruling in *In re Pacific
Lumber Co.*, 584 F.3d 229 (5th Cir. 2009) or Bankruptcy Code § 524(e). *Id.*

22.    Shortly before the Cedar Park Settlement was to be approved,
Cedar Park discovered that it was the Debtors' intention that the proposed
release extend to include waiver of all claims against nondebtor Harden.
Cedar Park filed an emergency motion [Docket No. 767] to enforce the
Cedar Park Settlement according to its stated terms and, on April 2, 2019,
the Court entered an order [Docket No. 861] granting that motion and
overruling the Debtors' objection.  That the Court has already barred the
Debtors once before from conditioning the transfer of facilities on the
release of claims against nondebtors makes the Debtors' present demands
particularly galling.

---

[6] OLP does acknowledge a recent discussion that would not require a release of
the guaranty claim; however, it would be conditioned upon OLP indemnifying the
bankruptcy estate for claims made by the guarantor once OLP is successful in collecting
on the guaranty.  Thus, whatever OLP received from the guarantor would be paid back to
the Debtors.

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document 4    Filed 11/05/19    Page 9 of 13    PageID 1105
Case 18-33907-bjh11    Doc 1305    Filed 07/08/19    Entered 07/09/19 17:13:14    Page 9 of 13

23.     *Second*, the Debtors are demanding that OLP release the Debtors from administrative expense liability related to the Debtors' continued occupation and use of the Premises.  This, too, is contrary to applicable law, because § 503(b)(1) requires the Court to allow administrative expenses for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A); *see also In re ASARCO, LLC*, 650 F.3d 593, 601 (5th Cir. 2011) (providing that administrative expense claims under § 503 "generally stem from voluntary transactions with third parties who lend goods or services necessary to the successful reorganization of the debtor's estate.").

24.     Case law here and in other districts consistently holds that a landlord's claim for rent chargeable for a debtor's postpetition use of leased property is entitled to administrative expense priority under Section 503(b)(1)(A). *See, e.g., In re Imperial Beverage Group, LLC*, 457 B.R. 490, 501 (Bankr. N.D. Tex. 2011), citing to 1 Collier Guide to Chapter 11, ¶ 20.06[6][c], and *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (holding "[l]andlords may assert a § 503(b)(1) claim for 'stub rent'"). Notwithstanding the rejection of the OLP Lease, the unpaid Postpetition Rent currently accruing under the OLP Lease is similarly entitled to administrative expense priority. *In re Williams Contract Furniture, Inc.*, 148 B.R. 799, 804 (Bankr. E.D. VA. 1992) ("it is generally accepted that once a lease is rejected . . . if the debtor remains in possession by failing to vacate the premises, the estate becomes liable to the lessor for an administrative expense claim arising from the benefit accruing to the estate for the continued use of the estate.") citing to *In re Bob Grissett*, 50 B.R. 598, 607-08 (E.D. Va. 1985), *Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1285 (5th Cir. 1986), *In re Thompson*, 788 F.2d 560, 563 (9th Cir. 1986), and *Farber v. Wards Co.*, 825 F.2d 684 (2d Cir. 1987).

25.     Among the factors to be considered in determining whether cause exists to terminate the automatic stay are the good faith or bad faith of the debtor. *In re A Partners, LLC*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006).  The Debtors attempts to force OLP to provide concessions that cannot be compelled through the Bankruptcy Code are indicative of bad

Case 19-03190-bjh   Doc 8   Filed 10/30/19   Entered 10/30/19 16:49:45   Desc Main
Case 3:19-cv-02283-E   Document   Filed 08/08/19   Page 10 of 13   PageID 1106
Case 18-33967-bjh11   Doc 1303   Filed 07/05/19   Entered 07/08/19 17:13:14   Page 10 of 13

faith.  Because cause exists, the Court should therefore lift the automatic stay.

26.     Additionally, OLP is entitled to stay relief pursuant to Section 362(d)(2) because the Debtors lack equity in the Premises, and the Premises, by the Debtors' own admission, are not necessary to an effective reorganization.  Because the Debtors rejected the OLP Lease, OLP cannot fathom what, if any equity interest the Debtors have in the Premises, notwithstanding the Debtors' unlawful squatting.  Moreover, by rejecting the OLP Lease, the Debtors have conceded that the Premises are not necessary to an effective reorganization.

27.     The Debtors' continued occupancy of the Premises has enabled them to continue operating the Facility and fulfilling their continuing duties to their patients.  In addition, the Court has already recognized that OLP is entitled to an administrative expense for property taxes accruing under the OLP Lease from and after the Petition Date.  Taxes Order, at ¶ 5; *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) (holding that "the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *see also In re Wyly*, 553 B.R. 318, 323 (Bankr. N.D. Tex. 2016); *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 529 (Bankr. N.D. Tex. 2010).  Accordingly, OLP is entitled to an administrative expense under § 503(b) for the Debtor's use and occupancy of the Premises.

28.     Notwithstanding the rejection of the OLP Lease, the Debtors have had a legal obligation to the State of Texas and a moral obligation to their patients to continue to operate the Facility until a new operator could be identified to take over the Facility.  In that time, the Debtors have continued to receive revenue from operations, and to retain the net income generated from that revenue.

29.     Having abdicated to OLP the responsibility to locate a new operator to assume responsibility for the Debtor Tenant's current patient obligations, the Debtors cannot possibly justify any further hold-up of that transition in the name of extracting concessions from OLP or benefits for

nondebtors who have contributed nothing to OLP or to these cases. This is especially so given that, upon information and belief, the Debtors may be accruing substantial administrative expense liabilities in these cases without any mechanism or plan for their eventual repayment. In such circumstances, the Debtors should be making all haste to transition operation of the Facility and stop the continued accrual of administrative expenses.

30.     Allowing the Debtors' continued occupation of the Premises may contribute to an exit hurdle the Debtors are uanable to overcome. Accordingly, allowing the Debtors to continue to occupy the Premises would not only harm OLP, but would appear to harm the Debtors' estate by needlessly adding administrative expenses.   Stay relief is needed to overcome the Debtors' obstructionism.

## **PRAYER**

In light of the foregoing, OLP respectfully requests that the Court enter an order (i) vacating the automatic stay under one or both of § 362(d)(1) and (d)(2) to permit OLP to exercise all available remedies under the OLP Lease and accompanying documents, including to seek the appointment of a receiver over the Debtor Tenant and the Facility at the Premises; (ii) waiving the fourteen-day stay provisions of Fed. R. Bankr. P. 4001(a)(3); and (iii) granting such other and further relief as the Court deems just and proper under the circumstances.

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document    Filed 08/26/19 Page 12 of 13    PageID 1108
Case 18-33967-bjh11 Doc 1505 Filed 07/08/19    Entered 07/08/19 17:13:14    Page 12 of 13

Dated: July 8, 2019          Respectfully submitted,

By: */s/ Michael P. Cooley*
          Michael P. Cooley (SBN 24034388)
          Keith M. Aurzada (SBN 24009880)
          Lindsey L. Robin (SBN 24091422)
          **REED SMITH LLP**
          2501 N. Harwood St., Ste. 1700
          Dallas, TX 75201
          T: 469.680.4200
          F: 469.680.4299
          mpcooley@reedsmith.com
          kaurzada@reedsmith.com
          lrobin@reedsmith.com

          *Attorneys for OLP Wyoming Springs,*
          *LLC*


### CERTIFICATE OF CONFERENCE

I certify that on July 8, 2019, I attempted to confer with Trey Monsour counsel for the Debtors via email, and am informed that the Debtors are opposed to the relief requested herein based upon prior conversations.


          */s/ Keith M. Aurzada*
          Keith M. Aurzada

Case 19-03190-bjh    Doc 8    Filed 10/30/19    Entered 10/30/19 16:49:45    Desc Main
Case 3:19-cv-02283-E    Document    Filed 08/48/2019    Page 13 of 13    PageID 1109
Case 18-33967-hjh11    Doc 1905    Filed 07/05/19    Entered 07/08/19 17:13:14    Page 13 of 13

## CERTIFICATE OF SERVICE

I certify that on July 8, 2019, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service in these cases and via first class mail on the parties identified on the attached master service list in accordance with Local Bankruptcy Rule 4001-1.


/s/ Michael P. Cooley
Michael P. Cooley

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CEDAR PARK HEALTHCARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:19-cv-00795-RP |
| | § | |
| HARDEN HEALTHCARE, LLC, | § | (Removed from the District Court of |
| | § | Williamson County, Texas, Cause |
| Defendant | § | No. 19-0213-C368) |

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND ABSTAIN

On this date, the Court considered Plaintiffs' Motion to Remand and Abstain. The Court further considered any response, reply, and the evidence proffered by the parties.  After due consideration, the Court finds and orders that Plaintiff's Motion to Remand and Abstain should be **DENIED.**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand and Abstain is **DENIED.**

**SIGNED** this _____ day of _____, 2019.

_____
**ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**