

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 18, 2019**

_United States Bankruptcy Judge_

___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SENIOR CARE CENTERS, LLC, et al. | § | Case No. 18-33967 (BJH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| CEDAR PARK HEALTHCARE, LLC | § | |
|    Plaintiff. | § | |
| | § | |
| v. | § | Adv. Pro. No. 19-03190-BJH |
| | § | |
| HARDEN HEALTHCARE, LLC | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S
## MOTION TO ABSTAIN AND REMAND

**I.    Introduction.**

There are at least three reasons why this litigation between *two non-debtors* belongs in state court. First, Defendant-Guarantor's Notice of Removal was untimely. Second, mandatory abstention applies and, thus, the court must abstain in deference to the state court. Third, weighing

the factors established in this Circuit, the court believes that permissive abstention/equitable remand is appropriate in this action.

## II. The Dispute between the Parties and How This Action Relates to the Above-Referenced Chapter 11 Cases.

On April 12, 2012, an entity known as Conroe Health Development, LP ("Conroe"), entered into a commercial property lease (as amended on January 1, 2014, the "Lease") with Cedar Park NC, LLC, one of the above-referenced Debtors, as tenant ("Debtor-Tenant").[1] In consideration for Conroe entering into the Lease, Harden Healthcare, LLC ("Defendant-Guarantor"), an indirect equity owner of Debtor-Tenant, executed a Lease Guaranty in favor of Conroe.[2] Conroe assigned its interest in the lease to Cedar Park Healthcare, LLC ("Plaintiff-Landlord") on August 28, 2012.[3]

At the time Debtor-Tenant entered into the Lease, it was a subsidiary of an entity called CTLTC Real Estate, LLC ("CTLTC").[4] It is not entirely clear from the pleadings, but it appears that CTLTC was either a direct or indirect subsidiary of Defendant-Guarantor. In September 2013, Defendant-Guarantor and its parent, Harden Healthcare Holdings, Inc. (collectively, the "Harden Entities"), engaged in a two-step process to shed their long-term care operations and merge with another entity.[5] First, the Harden Entities spun off their long-term care businesses, which included CTLTC and Debtor-Tenant.[6] The interests in CTLTC and Debtor-Tenant were transferred to several entities that previously owned Defendant-Guarantor, including a group of 14 creditors

---

[1] ECF No. 1 at 25.

[2] *Id.* at 82.

[3] *Id.* at 72.

[4] ECF No. 15 at 2.

[5] *Id.*

[6] *Id.*

known as the Capstar Capital Partners Creditors.[7] The Harden Entities then merged with Javelin Healthcare Holdings, LLC, a subsidiary of Gentiva Health Services, Inc.[8] As part of the spinoff and merger, the Capstar Capital Partners Creditors and CTLTC allegedly agreed to indemnify Defendant-Guarantor for losses from the operation of the long-term care business, including losses arising from any guaranty.

In 2015, Senior Care Centers, LLC ("Senior Care") purchased CTLTC and Debtor-Tenant.[9] In connection with that sale, Defendant-Guarantor contends that Senior Care and CTLTC were obligated to indemnify the Capstar Capital Partners Creditors from losses, including any losses relating to the Lease. As part of Senior Care's purchase of Debtor-Tenant, it executed a Lease Guaranty in favor of Plaintiff-Landlord.[10]

On June 6, 2018, Plaintiff-Landlord sent Debtor-Tenant, Defendant-Guarantor, and Senior Care a Default Notice and Demand for Payment.[11] On December 4, 2018, Senior Care, Debtor-Tenant, and several affiliates filed for relief under Chapter 11 of the Bankruptcy Code. On February 20, 2019, Plaintiff-Landlord filed its Original Petition and Request for Initial Disclosures in the 368th Judicial District Court, Williamson County, Texas, Cause No. 19-0213-C368 (the "Removed Action"). In the Removed Action, Plaintiff-Landlord is seeking to enforce the Lease Guaranty against Defendant-Guarantor. Plaintiff-Landlord claims that its damages exceed $2

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] ECF No. 1 at 201.

million.[12] Defendant-Guarantor was served with process on March 3, 2019 and filed its Original Answer to Plaintiff's Original Petition ten days later.[13]

Approximately six months after the commencement of the Removed Action, on August 8, 2019, Defendant-Guarantor removed the Removed Action to the United States District Court, Western District of Texas, Austin Division.[14] Shortly thereafter, Plaintiff-Landlord filed its Motion to Remand and Abstain (the "Motion to Remand").[15] In the Motion to Remand, Plaintiff-Landlord asserts that the Removed Action should be remanded because (i) Defendant-Guarantor filed its Notice of Removal more than four months late, (ii) mandatory abstention applies, and (iii) the court should permissively abstain or equitably remand the Removed Action to the court where it was filed. Defendant-Guarantor then filed its Opposed Motion to Transfer Venue to the Northern District of Texas.[16] The Austin District Court entered an order granting the Motion to Transfer Venue, holding that "the Bankruptcy Court should determine the appropriateness of remand, abstention, and the 'core' or 'non-core' nature of this dispute, this Court expresses no opinion on those issues."[17] The Removed Action was then transferred to the Northern District of Texas, which, in turn, referred the matter to this bankruptcy court on October 15, 2019.[18]

On November 26, 2019, this court heard oral argument on whether the Removed Action should be remanded to state court. After considering the briefing and oral arguments of counsel, the court concludes that the Removed Action should be remanded to state court for adjudication.

---

[12] *Id.* at 205.

[13] *Id.* at 87.

[14] *Id.* at 1.

[15] ECF No. 6.

[16] ECF No. 7.

[17] ECF No. 12 at 3.

[18] ECF No. 13.

**III.    Analysis**

**A.    The Timeliness Problem.**

The initial question is whether the Removed Action should be remanded to state court because Defendant-Guarantor failed to remove the Removed Action in a timely manner. Since Plaintiff-Landlord initiated the Removed Action after Debtors sought bankruptcy protection, Bankruptcy Rule 9027(a)(3) applies. Pursuant to that rule:

> If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons.[19]

Here, the following dates are relevant in determining whether the Notice of Removal was timely under Rule 9027:

- 12/04/2018: Debtors filed their bankruptcy petitions.
- 02/20/2019: Plaintiff-Landlord initiated the Removed Action.
- 03/04/2019: Defendant-Guarantor was served with process.
- 04/03/2019: Deadline to file a notice of removal under Rule 9027(a)(3).
- 08/08/2019: Notice of Removal filed.

As the timeline makes clear, Defendant-Guarantor cannot dispute that its removal of the Removed Action was untimely, and Defendant-Guarantor does not do so. Instead, Defendant-Guarantor contends its delay in removing the case was "excusable neglect" and the court should therefore extend the deadline for filing a notice of removal under Rule 9006. That rule provides, in relevant part, "when an act is required or allowed to be done at or within a specified period by these rules . . . the court for cause shown may at any time in its discretion . . . on motion made after

---

[19] FED. R. BANKR. P. 9027(a)(3).

the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."[20]

As a threshold matter, where an extension is requested after the removal deadline has passed, a motion is required to extend that deadline. Defendant-Guarantor did not file a motion to extend time in either the adversary proceeding or the main bankruptcy case. Nor are the orders signed by this court granting two of Debtors' own motions to extend time to remove civil actions applicable.[21] By their terms, those orders only apply to Debtors. The court also notes that Debtors' motions to extend time were timely filed with the court. For this reason alone, the court must grant the Motion to Remand.

Even if Defendant-Guarantor had filed a motion to extend time, it would need to establish that its failure to act was due to "excusable neglect." In the context of an untimely proof of claim, the Supreme Court has enumerated four factors in determining whether a party's neglect is excusable:

> (1) the reason for the delay, including whether it was within the reasonable control of the movant,
> (2) whether the movant acted in good faith,
> (3) the danger of prejudice to the debtor, and
> (4) the length of the delay and its potential impact on judicial proceedings.[22]

In considering the factors set forth in *Pioneer*, the court declines to exercise its discretion to find that excusable neglect exists here. Defendant-Guarantor's briefing focuses primarily on the first factor—the reason for the delay and whether it was within Defendant-Guarantor's control. Defendant-Guarantor contends that there were several circumstances that put the delay in removing the Removed Action outside of its control. Initially, Defendant-Guarantor thought that

---

[20] FED. R. BANKR. P. 9006(b)(1).

[21] Case No. 18-33967; ECF Nos. 876 and 1937.

[22] *Pioneer Inv. Servs. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993).

there were a number of events that would extinguish any potential liability to Plaintiff-Landlord. Those events included a settlement agreement between Debtors and Plaintiff-Landlord and negotiations in connection with Debtors' Plan of Reorganization and Disclosure Statement. Defendant-Guarantor also alleges that the need for removal did not become apparent until two similar guaranty actions pending in state court were removed.

The court does not think Defendant-Guarantor's reasons for its delay are compelling. Defendant-Guarantor was represented by competent counsel in both the Removed Action and Debtors' bankruptcy case. The plan, disclosure statement, and settlement negotiations did not prevent Defendant-Guarantor from removing the Removed Action. In fact, if Defendant-Guarantor thought these matters were critical to the Removed Action, it seems like it would have removed the Removed Action much sooner—or at least filed a motion to extend time to remove the Removed Action. Instead, Defendant-Guarantor chose to continue litigating in the Removed Action until shortly before it was required to respond to Plaintiff-Landlord's Motion for Summary Judgment.

Moreover, the court does not see how two similar guaranty actions that were removed more than three months after the removal deadline in this action are helpful to Defendant-Guarantor's argument. One of the actions was filed in state court *pre-petition*. Defendant-Guarantor had the opportunity to remove that action but, as in this case, chose not to do so. Only after an intervenor joined that proceeding, did the opportunity for removal again present itself in that case. On the whole, Defendant-Guarantor's actions do not appear to be a delay outside of its control, but rather a calculated change in legal strategy.

This change in litigation strategy also leads the court to question whether Defendant-Guarantor acted in good faith. By all appearances, Defendant-Guarantor's decision to remove the

7

Removed Action on the eve of the hearing on Plaintiff-Landlord's Motion for Summary Judgment, is a litigation tactic aimed at delaying Plaintiff-Landlord from obtaining a judgment against it. For example, Defendant-Guarantor explains that one reason removal is appropriate is that it needs this court to determine whether Defendant-Guarantor was released in connection with the Plaintiff-Landlord and Debtors' settlement agreement. However, as Defendant-Guarantor concedes, this court has already ruled that the release between Plaintiff-Landlord and Debtors did not release Defendant-Guarantor. Despite Defendant-Guarantor's claim that the court "initially" held that it was not released and that it is going to seek reconsideration of the court's decision in connection with this holding, that ruling is final, non-appealable, and the deadline to move for reconsideration has long since expired.[23] **Notably, Defendant-Guarantor made this representation on August 28, 2019, yet, to date, no such motion has been filed.**[24]

The court believes that the third factor also favors Plaintiff-Landlord. When a removal action involves two non-debtors, the court should consider the danger of prejudice to the *non-removing party*—not the debtor. This is logical since, in applying the four-factor test, the court is required to "balance the harms" between the moving and non-moving party.[25] In the context of a late-filed proof of claim, the moving party would be a creditor and the non-moving party would generally be a debtor. Here it is Defendant-Guarantor, as the removing party, and Plaintiff-Landlord, as the non-removing party. In connection with the Removed Action, Plaintiff-Landlord has spent a considerable amount of time and resources in pursuing its claims against Defendant-Guarantor, including conducting discovery and moving for summary judgment. Plaintiff-Landlord

---

[23] *See, e.g. Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative (In re Cajun Electric Power Cooperative),* 119 F.3d 349, 354 (5th Cir.1997); FED. R. BANKR. P. 9023(e).

[24] ECF No. 7 at 2.

[25] *See Pioneer,* 507 U.S. at 389.

would be prejudiced by the delay if it were required to expend additional resources in duplicating its efforts in this court.

As to the final factor, the length of the delay and its potential impact on judicial proceedings, Defendant-Guarantor relies on Judge D. Michael Lynn's opinion in *In re Pilgrim's Pride Corp* for the proposition that a nine-month delay did not negatively affect case administration.[26] However, the circumstances of that case were far different than the case at bar. In that case, Raymond Love, an employee of Pilgrim's Pride, was injured in a fall after the commencement of Pilgrim's Pride's bankruptcy case.[27] Mr. Love, through his personal injury lawyer, made an arbitration demand against the debtor.[28] After the debtor's plan was confirmed, it sent a notice of the administrative claims bar date to Mr. Love's home address.[29] Well after the bar date passed, the debtor moved to dismiss the arbitration proceeding.[30] Shortly thereafter, Mr. Love's personal injury attorney contacted a bankruptcy attorney who immediately prepared and filed an application to allow a late-filed administrative claim in the debtor's bankruptcy case.[31]

Applying the *Pioneer* factors, the court determined that Mr. Love's neglect in timely filing an administrative claim was excusable.[32] In its assessment, the court factored in Mr. Love's lack of sophistication in bankruptcy matters, the fact that Mr. Love had nothing to gain and a lot to lose by his delay, that the debtor paid all creditors with interest, and any judgment would be

---

[26] No. 08-45664, 2011 WL 576070 (Bankr. N.D. Tex., Feb. 9, 2011).

[27] *Id.* at *1.

[28] *Id.*

[29] *Id.*

[30] *Id.* at *2.

[31] *Id.*

[32] *Id.* at *4.

insignificant compared to the value of the debtors' assets.[33] The court also noted that the delay, in and of itself, should not preclude a finding of inexcusable neglect, especially since the debtors waited seven months after the administrative claims bar date to file its motion to dismiss the arbitration proceeding.[34]

Unlike Mr. Love in the *Pilgrim's Pride* case, Defendant-Guarantor has everything to gain by its delay and nothing to lose. Defendant-Guarantor is not losing any of its rights with this remand. And, while the length of the delay will not impact Debtors' reorganization it has, and if the case is not remanded, will continue to delay the final resolution of the Removed Action. Further, as stated above, Defendant-Guarantor retained competent bankruptcy counsel well before the original deadline to remove the Removed Action. In short, application of the *Pioneer* factors in this case, requires a different conclusion than Judge Lynn's decision in *Pilgrim's Pride.*

The court also finds the Supreme Court's definition of neglect as germane to its analysis: "The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness.*'"[35] Defendant-Guarantor's actions were anything but careless: it answered Plaintiff-Landlord's complaint, participated in discovery, sought agreement from Plaintiff-Landlord to postpone the hearing on Plaintiff-Landlord's Motion for Summary Judgment by six weeks, and waited until shortly before its deadline to respond to that motion to remove the Removed Action. Defendant-Guarantor did not inadvertently miss a deadline or make a careless procedural error—its actions were calculated, under the direction of competent counsel.

---

[33] *Id.* at *3-4.

[34] *Id.* at *4.

[35] *Pioneer*, 507 U.S. at 388.

Finally, Defendant-Guarantor attempts a "Hail Mary" by invoking the court's § 105(a) equitable power to extend the removal deadline. Defendant-Guarantor overlooks a key portion of the statute, which is that the court may use its equitable powers "to carry out the provisions of this title."[36] Defendant-Guarantor cites to no other provision in Title 11 that would apply in this case, nor can the court think of one. A bankruptcy court's equity power can only be exercised within the confines of the Bankruptcy Code.[37] Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity[.]"[38]

**B.    Pursuant to 28 U.S.C. § 1134(c)(2), the Court Must Abstain from Adjudicating the Removed Action.**

In addition to the fact that the Removed Action must be remanded to state court because Defendant-Guarantor failed to remove the Removed Action in a timely manner, the court must remand the Removed Action because mandatory abstention applies. Congress has provided that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[39]

The Fifth Circuit has articulated that mandatory abstention applies where (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, *i.e.*, it is related to a case under title 11; (3) an action has been commenced in state

---

[36] 11 U.S.C. § 105(a).

[37] *Law v. Siegel*, 571 U.S. 415, 421 (2014).

[38] *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986).

[39] 28 U.S.C. § 1334(c)(2).

court; and (4) the action could be adjudicated timely in state court.[40] As explained by Chief Judge Barbara Houser, "Any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court."[41]

Initially, the first and third factors are not controversial; there is no basis for federal jurisdiction, other than § 1334(b) and the Removed Action was commenced in state court. At issue is whether the claim in the Removed Action is a non-core proceeding and whether it can be timely adjudicated in state court. Here, the claim is for a breach of guaranty by one non-debtor against another non-debtor. There is little doubt that these claims are non-core.[42]

Defendant-Guarantor attempts to characterize this matter as core on the grounds that it is going to seek reconsideration of this court's determination that Defendant-Guarantor was not released by the settlement agreement between Debtors and Plaintiff-Landlord, Debtors have indemnification obligations to it, and that this matter affects the administration of Debtors' estate. Defendant-Guarantor's assertions are red herrings that distract from the fact that the Removed Action concerns a non-core breach of contract claim made by one non-debtor against another non-debtor. A particularly instructive case is *In re AOG Entertainment, Inc.*[43] In that case, Judge Stuart Bernstein explained that the court had only non-core, "related to" jurisdiction over an indemnity claim, which was contingent on the outcome of a separate lawsuit between two non-debtors.[44] After considering the remaining factors, the court held that mandatory abstention applied and

---

[40] *Edge Petroleum Operating Co., Inc. v. GPR Holdings, L.L.C.*, 483 F.3d 292, 300 (5th Cir. 2007).

[41] *In re Kevco*, 309 B.R. 458, 462 (Bankr. N.D. Tex. 2004) (internal quotations and citations omitted), *aff'd*, 2003 WL 23784080 (N.D. Tex. 2003), *aff'd*, 113 Fed. Appx. 29 (5th Cir. 2004), *cert denied*, 544 U.S. 948 (2005).

[42] *See Coho Oil & Gas v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004).

[43] 569 B.R. 563 (Bankr. S.D.N.Y. 2017).

[44] *Id.* at 578.

remanded the case to a California state court.[45] The court believes that the court's reasoning in *AOG* equally applies to the case at bar.

The court is also satisfied that this matter could be timely adjudicated in state court. The Removed Action was initiated on February 20, 2019. Before Plaintiff-Landlord agreed to a six-week delay at Defendant-Guarantor's request, its Motion for Summary Judgment was going to be heard within four months of the action being commenced—less time than it took Defendant-Guarantor to file its Notice of Removal. The parties had also taken discovery during that period. Further, if a party requests a jury trial, this matter could take far longer to adjudicate in this court than state court because, unless the parties were to agree to this court conducting a jury trial, the case would need to be withdrawn to the district court.

C.   **Permissive Abstention/Equitable Remand is Appropriate in This Case.**

The court also believes that it should exercise its discretion to abstain from hearing the Removed Action pursuant to 28 U.S.C. § 1334(c)(1) or, simply remand the Removed Action pursuant to 28 U.S.C. § 1452(b) on equitable principles. This court has broad discretion to abstain from hearing a matter if "in the interest of justice, or in the interest of comity with State courts or respect for State law."[46] Similarly, 28 U.S.C. § 1452(b) instructs that a removed claim or cause of action may be remanded on any equitable ground. "Because the statutes are similar in purposes, the circumstances which weigh in favor of discretionary abstention weigh in favor of or constrain remand under § 1452(b)."[47]

Courts have enumerated 14 factors to consider in determining whether to abstain or equitably remand a removed action:

---

[45] *Id.* at 585.

[46] 28 U.S.C. § 1334(c)(1), *see also Stern v. Marshall,* 564 U.S. 462, 502 (2011).

[47] *In re Heritage Southwest Medical Group, P.A.,* 423 B.R. 809, 815 (Bankr. N.D. Tex. 2010).

(1) the effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) the jurisdictional basis, if any, other than § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the court's docket;

(10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.[48]

As was the case in *Coho*, "state law issues do not merely predominate; they overwhelm."[49] The Removed Action is a breach of guaranty action, based entirely on state law. Further, three critical factors support permissive abstention: i) both parties are non-debtors; ii) this is a non-core matter; and iii) abstaining from hearing the Removed Action promotes comity with state courts.

---

[48] *Id.*

[49] *Coho*, 309 B.R. at 222.

The court shall therefore permissively abstain from hearing the Removed Action and remand it to state court.

Based on the foregoing,

      **IT IS ORDERED** that the Motion to Remand is **GRANTED**.

      **IT IS FURTHER ORDERED** that this Adversary Proceeding is remanded to the 368th Judicial District Court of Williamson County, Texas for all further proceedings.

      **###END OF MEMORANDUM OPINION AND ORDER###**